**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

MARVIN ROBINSON                                    CIVIL ACTION

VERSUS                                             NO. 15-5066

N. BURL CAIN                                       SECTION:    "J"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Marvin Robinson, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In April 2005, he was charged with simple burglary of a vehicle in violation of Louisiana Revised Statute 14:62.[1]    On August 21, 2008, a jury found him guilty as charged.[2]    On October 17, 2008, the trial court sentenced

---

[1]  State Rec., Vol. 1 of 9, Bill of Information.

[2]  State Rec., Vol. 1 of 9, Minute Entry, 8/21/08.

him to 11 years imprisonment at hard labor.[3]    That same day, the State filed a multiple-offender bill of information charging him as a third-felony offender.    On December 12, 2008, following a multiple-bill hearing, the trial court vacated the original sentence and sentenced him as a third-felony offender to life imprisonment without benefit or parole, probation or suspension of sentence.[4]    Robinson appealed.

On direct appeal, counsel argued that a motion for a sanity commission was filed pretrial, but no hearing was held and no ruling issued on Robinson's competency to proceed. The Louisiana Fifth Circuit Court of Appeal agreed this was error and set aside the conviction and habitual-offender sentence.    The court of appeal remanded the matter, instructing the trial court that "no further steps in the prosecution be taken until the defendant is evaluated, a hearing is conducted, and the trial judge rules on the defendant's capacity to proceed."[5] The appellate court noted that a retroactive competency hearing was not appropriate in this case.    The appellate court further declined to address Robinson's pro se assignments of error in light of its ruling.

The State successfully challenged the ruling in the Louisiana Supreme Court.    The Louisiana Supreme Court granted the State's writ, reversed the ruling by the Louisiana Fifth Circuit, and remanded the matter to the trial court "to determine whether a meaningful

---

[3]  State Rec., Vol. 1 of 9, Minute Entry, 10/17/08.

[4]  State Rec., Vol. 1 of 9, Minute Entry, 12/12/08.

[5]  State Rec., Vol. 5 of 9, *State v. Robinson*, Nos. 09-KA-371, 09-KA-372 (La. App. 5 Cir. 3/23/10), 39 So.3d 692, 704.    Robinson's two notices of appeal filed after the original sentencing and habitual offender sentencing were consolidated.

inquiry can be had regarding defendant's competency."    If deemed possible, the trial court was instructed to conduct a meaningful retrospective competency hearing and make a determination on competency.[6]

New counsel, James Williams, enrolled on Robinson's behalf for purposes of the competency hearing, which was held on February 16, 2011.    The trial court considered the original report rendered by the sanity commission, which consisted of forensic psychologist, Dr. Rafael Salcedo, and forensic psychiatrist, Dr. Richard Richoux, along with the testimony of Dr. Salcedo, and concluded that Robinson was competent to stand trial and could assist counsel in trial preparation and trial strategy in 2008.[7]    Robinson filed a notice of appeal. The trial court held that the appropriate vehicle by which to challenge the ruling was a supervisory writ application and not an appeal;[8]  however, the Louisiana Fifth Circuit subsequently ruled otherwise and vacated the trial court's ruling, in effect reinstating his appeal rights.    The appellate court noted that "relator's appeal rights on his competency determination and other issues pretermitted in his earlier appeal are reserved."[9]

Robinson was appointed counsel for his second direct appeal.    By counseled brief, he argued that the sentence was excessive.    In a pro se brief, he argued that the trial court

---

[6]  State Rec., Vol. 5 of 9, *State v. Robinson*, 2010-K-0924 (La. 12/17/10), 50 So.3d 156.

[7]  State Rec., Vol. 2 of 9, Minute Entry, 2/16/11.    *See also* State Rec., Vol. 5 of 9, Transcript of Hearing.

[8]  State Rec., Vol. 2 of 9, District Court Order 3/24/11.

[9]  State Rec., Vol. 2 of 9, *State v. Robinson*, 11-KH-448 (La. App. 5 Cir. May 26, 2011).

erred in making a retroactive determination of competency in violation of his right to due process, right to a fair trial, and that trial counsel's omissions denied him the right to present a defense. The Louisiana Fifth Circuit affirmed the conviction and habitual-offender sentence.[10] The Louisiana Supreme Court denied his application for writ of certiorari.[11]

On June 24, 2013, Robinson submitted his application for post-conviction relief to the state district court. In that application, he claimed trial counsel Calvin Fleming was ineffective for failing to investigate his mental-health history in order to pursue an insanity defense and provide Robinson a full and fair hearing by a sanity commission. He also claimed that counsel James Williams was ineffective for failing to adequately investigate and present Robinson's mental health records for the *nunc pro tunc* competency hearing or to obtain a continuance.

While his post-conviction application was pending he also filed a motion to correct an illegal sentence. The motion was dated September 25, 2013.[12] That motion was denied by the trial court on November 13, 2013.[13] He filed a supervisory writ application challenging the ruling. The Louisiana Fifth Circuit denied the writ on May 19, 2014.[14] He did not pursue supervisory review in the Louisiana Supreme Court.

---

[10] *State v. Robinson*, 12-KA-22 (La. App. 5 Cir. 10/16/12), 102 So.3d 922.

[11] *State v. Robinson*, 12-KO-2434 (La. 4/12/13), 111 So.3d 1017.

[12] State Rec., Vol. 3 of 9.

[13] State Rec., Vol. 3 of 9, District Court Order, 11/13/13.

[14] State Rec., Vol. 3 of 9, *State v. Robinson*, 14-KH-225 (La. App. 5 Cir. May 19, 2014).

On July 31, 2014, the trial court denied his application for post-conviction relief.[15] On October 1, 2014, the Louisiana Fifth Circuit denied his related application for supervisory writ.[16]     The court of appeal rejected his ineffective-assistance claims on the merits finding his allegations conclusory.     On August 28, 2015, the Louisiana Supreme Court denied relief without additional stated reasons.[17]

On October 1, 2015, Robinson filed his federal application for habeas corpus relief.[18] In that application, he raises three grounds for relief:     (1) counsel was ineffective during the *nunc pro tunc* competency proceedings for failing to submit his mental-health records and failing to pursue the motion for continuance; (2) trial counsel was ineffective for failing to investigate his past mental-health history for the competency hearing and for failing to change the plea and argue that he was not guilty by reason of insanity; and (3) the state district court's ruling erroneously overlooked or ignored a previous order by the direct-appeal court "that defense counsel could not stipulate to a competency report and move to dismiss his motion for a sanity hearing after one had already been granted."     The State concedes that the federal application is timely and argues the claims should be denied on the

---

[15]  State Rec., Vol. 3 of 9, State District Court Order Denying PCR, 7/31/14.

[16]  State Rec., Vol. 3 of 9, *State v. Robinson*, 14-KH-657 (La. App. 5 Cir. Oct. 1, 2014).

[17]  *State ex rel. Robinson v. State*, 2014-KH-2215 (La. 8/28/15); State Rec., Vol. 3 of 9.

[18]  Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.     His pauper application was denied because his affidavit showed he had sufficient funds to pay the filing fee.     He subsequently paid the filing fee and the matter was reopened in April 2017.

merits.[19]    Robinson has filed a reply to the State's response.[20]

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

adduced at trial as follows:

> At trial, Julio Salmeron testified that, on March 29, 2005, he went outside of the Poposeria Restaurant where he was employed and found the defendant sitting in the passenger seat of his car with the door closed. Thereafter, Salmeron called the police. Salmeron testified that the defendant returned inside the restaurant after the defendant "broke in" his car. According to Salmeron, he did not know the defendant and did not give him permission to go into his car.
>
> Gordon McCraw, formerly with the Gretna Police Department, testified that he responded to the car burglary at Poposeria located in the 2300 block of Belle Chasse Highway. McCraw testified that Salmeron met him outside the restaurant. Salmeron informed McCraw that the person he saw inside his vehicle was inside the restaurant. Salmeron pointed out the defendant, who was in the front of the restaurant when the Gretna police arrived.
>
> After Salmeron positively identified the defendant, McCraw arrested him. In a search of the defendant incident to arrest, McCraw found a woman's watch and a man's black wallet containing Salmeron's identification. The defendant told McCraw that he found the wallet on the ground. After McCraw searched the defendant on site, the officer gave Salmeron his wallet found on the defendant. According to Salmeron, his girlfriend's watch was also missing from the car. However, Salmeron did not remember if he reported the missing watch to the police.
>
> Eric Becnel, formerly a detective with the Gretna Police Department and currently employed by the FBI in New Orleans, testified that when he interviewed the defendant, the defendant initially denied any involvement in the burglary. The defendant told him that he found the wallet on the ground. Becnel testified that the defendant subsequently admitted to actually burglarizing the vehicle and taking the wallet off the car seat when Becnel told

---

[19]  Rec. Doc. 17.

[20]  Rec. Doc. 20.

the defendant that a witness saw him in the car rummaging through it. According to Becnel, he also recorded a second interview with the defendant, 35 to 45 minutes later at the police station. The defendant did not admit in either statement to taking the watch found in his possession out of the car.[21]

## Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have

---

[21]  *State v. Robinson*, 39 So.3d at 694-95.

independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that is materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102

(emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

A.  *Ineffective Assistance of Counsel*

Robinson asserts several claims of ineffective assistance with respect to his trial counsel and his counsel for the *nunc pro tunc* competency hearing.    His claims generally relate to their alleged omissions regarding his past mental-health history.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective-assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by

the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected his ineffective-assistance-of-counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190). For the following reasons, the state court's determination is neither contrary to, nor an unreasonable application of, clearly established federal law.

       1.     Competency Proceedings

Robinson claims that counsel should have investigated his mental-health history and obtained his mental-health records. He also asserts that counsel Williams should have pursued the motion for continuance he filed because he did not have the necessary records for the *nunc pro tunc* competency hearing. He alleges that the result would have been different had the mental-health records reflecting treatment at Charity and West Jefferson Mental Health Clinic from 2002-2003 for various mental-health problems been presented to the trial court.

The Louisiana Fifth Circuit addressed his related claim on direct appeal that he was denied a meaningful *nunc pro tunc* hearing and competency determination in violation of his constitutional rights because evidence regarding his past mental-health treatment was not presented.[22] In denying the claim, the court of appeal reasoned such evidence, even if it

---

[22] The court of appeal pretermitted the ineffective assistance of counsel claim noting it was more appropriate for post-conviction review.

existed, was not essential to the competency determination.    The court of appeal analyzed

the issue as follows:

> Next, Defendant argues that the trial court's ruling on competency was erroneous because neither the sanity commission nor the trial court considered his mental health history. Again, Defendant cites to no authority which requires the sanity commission or the trial court to consider a defendant's history of mental health in making a competency determination. *See* LSA–C.Cr.P. arts. 641–648. To the contrary, both the Louisiana Supreme Court and the Louisiana Second Circuit Court of Appeal have upheld the trial courts' rulings on competency despite the fact that there was evidence of the defendants' mental illness or borderline intelligence. *See State v. Jones*, 376 So.2d 125 (La. 1979); *State v. Dupree*, 41,658 (La. App. 2 Cir. 1/31/07); 950 So.2d 140, *writ denied*, 07–0439 (La. 10/12/07); 965 So.2d 396, where the consideration of defendants' past histories of schizophrenia did not warrant reversal of the trial courts' determinations of defendants' present competency to stand trial; and *State v. Holmes*, 06–2988 (La. 12/2/08); 5 So.3d 42, *cert. denied*, 558 U.S. 932, 130 S.Ct. 70, 175 L.Ed.2d 233 (2009), where the consideration of defendant's past history of borderline intelligence did not warrant reversal of the trial court's determination of defendant's present competency to stand trial.

> LSA–C.Cr.P. art. 641 provides that "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant **presently** lacks the capacity to understand the proceedings against him or to assist in his defense." (Emphasis added). Louisiana law presumes a defendant's sanity. Therefore, the burden is upon the accused to establish by a preponderance of the evidence that the mental incapacity delineated in LSA–C.Cr.P. art. 641 exists. LSA–R.S. 15:432; *Holmes*, 06–2988; 5 So.3d at 54–55.

> Although a trial court may receive expert medical testimony on the issue of a defendant's competency to proceed to trial, the ultimate decision of capacity rests alone with the trial court. LSA–C.Cr.P. art. 647; *Id.* (citation omitted). A reviewing court owes the trial court's determination of a defendant's mental capacity great weight, and its ruling should not be disturbed in the absence of manifest error. *Id.* (citations omitted).

> In *State v. Bennett*, 345 So.2d 1129, 1138 (La.1977), this Court held that the appropriate considerations for determining whether the accused is fully aware of the nature of the proceedings include:

whether he understands the nature of the charge and can appreciate its
seriousness; whether he understands what defenses are available;
whether he can distinguish a guilty plea from a not guilty plea and
understand the consequences of each; whether he has an awareness of
his legal rights; and whether he understands the range of possible
verdicts and the consequences of conviction.

Additionally, in determining an accused's ability to assist in his defense,
consideration should include:

whether he is able to recall and relate facts pertaining to his actions and
whereabouts at certain times; whether he is able to assist counsel in
locating and examining relevant witnesses; whether he is able to
maintain a consistent defense; whether he is able to listen to the
testimony of witnesses and inform his lawyer of any distortions or
misstatements; whether he has the ability to make simple decisions in
response to well-explained alternatives; whether, if necessary to defense
strategy, he is capable of testifying in his own defense; and to what
extent, if any, his mental condition is apt to deteriorate under the stress
of trial.

*Bennett*, 345 So.2d at 1138 (citations omitted).

As noted in the previous appeal, the trial record does not reflect that
Defendant filed a motion requesting a mental examination. However, both
Defendant and the State stipulated in their former briefs that the defense
requested a mental examination for Defendant, and the trial court ordered the
mental examination and appointed a sanity commission to examine and report
on the mental condition of Defendant pursuant to LSA–C.Cr.P. art. 644.
*Robinson*, 09–371; 39 So.3d at 697.

On remand, the trial court held a *nunc pro tunc* competency hearing on
February 16, 2011. Dr. Rafael Salcedo, an expert in forensic psychology,
testified at the hearing. Dr. Salcedo evaluated Defendant on May 14, 2008, in
order to determine his competency to proceed to trial. He stated that the
evaluation "failed to reveal evidence that [Defendant] was showing any signs
or symptoms of suffering from any major psychiatric disorder." He further
stated that Defendant was able to give adequate responses to questions
concerning the *Bennett* criteria for competency to proceed.

In their May 14, 2008 report, Dr. Salcedo and Dr. Richard Richoux both
recommended that the trial court find Defendant competent to stand trial. The

report specifically noted that Defendant acknowledged a history of arrests and polysubstance abuse; nevertheless, Defendant's responses to questions concerning the *Bennett* criteria indicated that he "fully understands the charges and proceedings against him, and is able to assist his attorney in preparing his defense."

On cross-examination, Dr. Salcedo testified that neither Defendant nor his counsel had informed him of prior treatment for mental health, and if he had been aware of prior treatment, it would have been mentioned in his report. Dr. Salcedo remembered that Defendant had no trouble communicating with him during the evaluation. Dr. Salcedo also stated that it would not have affected his findings had he later learned Defendant was taking medicine to assist him with insomnia, because insomnia is not a major psychiatric disorder which would have impaired his ability to meet the *Bennett* criteria.

On re-direct examination, Dr. Salcedo admitted that prior mental health records were not particularly relevant to his inquiry as to whether Defendant met the *Bennett* criteria. He explained that he would "sometimes" receive records of an individual's history of mental health treatment. However, he further explained that due to the narrow scope of a competency examination, "it's not of particular usefulness to go looking for psychiatric treatment records from the past," because the individual is being evaluated on their present ability to meet the *Bennett* criteria.

At the conclusion of Dr. Salcedo's testimony, the matter was submitted. Relying on the doctors' report and the stipulation, the trial court ultimately found that Defendant was "competent to stand trial, able to assist his attorney in fact-finding, in witnesses [sic] of that trial."[23]

Notably, the defense admitted no evidence of prior mental health issues and voiced no objection to the trial court's retroactive finding of competence to proceed to trial; rather, counsel responded, "Very well, your honor." Significantly, Defendant proceeded to trial after stipulating to the report, and, subsequently, elicited no evidence to the contrary at the *nunc pro tunc* hearing. (*See State v. Anderson*, 06–2987 (La. 9/9/08); 996 So.2d 973, 993, *cert. denied*, 556 U.S. 1165, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009), where the Louisiana Supreme Court noted that the defense voiced no objection to the trial court's finding of competence to proceed to trial, yet still addressed the merits of the competency ruling.) Further, by the time the trial court made a competency

---

[23] Additionally, just prior to trial on August 21, 2008, Defendant stipulated to the doctors' report.

ruling, he had an opportunity to observe Defendant's demeanor, firsthand, during the motion to suppress[24] and under the stress of trial, and apparently detected no mental difficulties to warrant intervention. *See Anderson, supra*, where the Court considered the fact that the trial court had the ability to observe defendant during the stress of trial and apparently detected no mental difficulties to warrant intervention as a significant factor in reviewing his pre-trial competency ruling.

Considering the totality of the circumstances and the trial court's personal observations of Defendant, we find that the record supports the trial court's findings that Defendant was aware of the charges and proceedings against him, the consequences of these charges, and was able to assist in his defense. Thus, Defendant failed to prove his incompetency to stand trial by a preponderance of the evidence.[25]

The state courts also considered the ineffective-assistance-of-counsel argument and the medical records Robinson submitted with his post-conviction application in light of controlling precedent under *Strickland* and rejected the claim. The state district court concluded that no deficiency or prejudice occurred because as the record makes clear the critical focus is "his present ability to meet the *Bennett* criteria" and whether "he presently lacks the capacity to understand the proceedings against him or assist in his defense," not his mental-health history.[26] The Louisiana Fifth Circuit denied relief, finding his allegations conclusory. The Louisiana Supreme Court likewise denied relief without additional stated

---

[24] Prior to trial on August 21, 2008, the trial court held a motion to suppress hearing where Defendant testified and could clearly recount his version of the facts to assist in his defense. Defendant testified that he retrieved the victim's wallet from the ground, and he was essentially beaten until he changed his statement to reflect that he took the wallet out of the victim's vehicle. He also had a clear recollection of his past convictions.

[25] *State v. Robinson*, 102 So.3d at 928-30 (footnotes in original).

[26] State Rec., Vol. 3 of 9, State District Court Order denying PCR.

reasons.

In this case, defense counsel were both aware of Robinson's mental-health history and illicit substance abuse. In fact, trial counsel moved for a sanity commission on Robinson's behalf to protect his constitutional rights. He ensured Robinson's right to an evaluation by a sanity commission appointed by the court and composed of a forensic psychiatrist and forensic psychologist. In May 2008, the sanity commission examined Robinson's current mental state and issued the following report:

> Pursuant to court appointment, the above captioned defendant was seen for an evaluation in order to determine if he currently suffers from a mental disorder affecting his ability to meet the Bennett criteria for competency to proceed to trial.
>
> Results of our examination indicate that Mr. Robinson did not show any signs or symptoms of a major psychotic disorder. He did acknowledge a history of polysubstance abuse, and an extensive history of arrests, i.e., as many as thirty to forty. He has evidently spent up to nineteen years of his adult life incarcerated in connection with convictions of simple robbery and armed robbery.
>
> Otherwise, Mr. Robinson did not show any signs or symptoms of suffering from any major psychiatric pathology. Not surprisingly, he was able to give adequate responses to questions concerning the Bennett criteria for competency to proceed, which indicate that he fully understands the charges and the proceedings against him, and is able to assist his attorney in preparing his defense.
>
> Based on the foregoing, our recommendation to the court is that Mr. Robinson be found competent to proceed.[27]

The impact of prior mental-health issues on competency evaluations was also

---

[27] State Rec., Vol. 9 of 9, May 14, 2008 Sanity Commission Recommendation to the Court.

explored during the *nunc pro tunc* hearing.    The State's witness, Dr. Salcedo, testified at length about the examination that was conducted and the relevant considerations surrounding the competency determination.    As he explained, "a defendant can be, or can have a lack of knowledge regarding questions involving the Bennett criteria for competency to proceed, they might not know their legal rights all the way, you know, or specifically, or they may—may lack knowledge about certain things; but the first predicate has to be that they are suffering from a psychiatric disorder, which causes the impairment, okay, so it's not lack of knowledge, alone, but there has to be the presence of a major psychiatric illness, schizophrenia, bipolar disorder with psychotic features, significant mental retardation, something which causes the defendant to be unable to understand the Bennett criteria for competency to proceed." [28]    Robinson's counsel, on cross-examination, questioned Dr. Salcedo about the existence of past mental illness or prior treatment.    Dr. Salcedo admitted he was not privy to information regarding Robinson's prior mental illnesses or treatment for mental illnesses because, if so, it would have been noted in the report.    However, he explained on redirect that he will not routinely review such evidence even when it exists because it is not particularly useful in determining a defendant's current state of mind.    In most cases, he stated it would be more of an academic curiosity than a necessity to review records of past mental illness:

> If a defendant is well stabilized on medications that he might be receiving at the jail, and again a competency examination is an examination of a defendant's state at the time of the examination, and—and deals with their ability to be psychologically present in court, to confront their accusers and to

---

[28]  State Rec., Vol. 2 of 9, Transcript of Competency Hearing (Feb. 16, 2011), p. 7.

> help their counsel defend them; and so in that sense, it's a focused type of examination.    If that person can demonstrate that they can do that, it's not of particular usefulness to go looking for psychiatric treatment records from the past, because as they sit here, so to speak, today, they're well stabilized, you know, they're rational, lucid, and they understand the Bennett criteria.    So if we have that in mind, then—then, you know, it's—it could be academically interesting to see what treatment they may have received in the past, but the bottom line is that they're—they're able to fulfill the Bennett criteria for competency to proceed.    If they're not, then that becomes more of an issue. If we render a report that says a defendant is incompetent and they received psychiatric treatment in the past, then that becomes more relevant in terms of obtaining those records.[29]

Counsel also questioned to what extent Robinson's substance abuse or current medications factored into the determination.    Dr. Salcedo stated substance abuse was not of particular significance because generally by the time a sanity commission is requested and an evaluation conducted, a defendant would have been incarcerated for quite some time and cleared from any effects of those substances.[30]    Although he was not aware that Robinson was taking medication, he stated the fact that he was given medication for sleeping at the time and perhaps suffering from insomnia or other sleep difficulties would not constitute a disorder of the type that would impact an individual's capacity to meet the requisite criteria.[31]    Considering the evidence adduced, the trial court issued a retroactive determination, stating

> I remember the May date, when this came in here; and I believe the problem happened when the equipment broke down, and we couldn't have a transcript perfected. But I remember that there was a stipulation from Counsel based

---

[29]  State Rec., Vol. 2 of 9, Hearing Transcript, p. 14.

[30]  State Rec., Vol. 2 of 9, Hearing Transcript, pp. 10-11.

[31]  State Rec., Vol. 2 of 9, Hearing Transcript, pp. 10, 12-13.

upon the representations from Ms. Johnson, a report was going to be completed. It wasn't completed at that particular time, because of the date of the examination, and the date of the stipulation.

So based on that stipulation, and based on what Dr. Salcedo said, the Court's going to find that, in May of 2008, that the Defendant was competent to stand trial, was able to assist his attorney in fact finding, in witnesses [sic], of that trial. So I'm going to find that he's competent to stand trial.[32]

Robinson argues that if Dr. Salcedo had possessed information about his "history of mental health disorders" indicated by his mental-health records, he would have concluded that Robinson suffered from a major psychiatric disorder and was not competent to proceed. However, the record demonstrates that regardless of his past problems, Robinson was *presently* oriented and able to satisfy the requisite criteria to the satisfaction of two mental-health professionals. A review of the state court record, including correspondence and testimony by Robinson, also supports that finding.

The mental health records submitted by Robinson show that he visited clinics sporadically over a one-year period from approximately 2002 to 2003. During that time, he was diagnosed with psychiatric problems and treated with various medications including Haldol, Vistaril and Zyprexa.[33] The report submitted by Robinson reflects that at the time he was 42 years old and denied any past psychiatric hospitalizations. Despite Robinson's

---

[32] State Rec., Vol. 2 of 9, Transcript of Hearing (Feb. 16, 2011), p. 15.

[33] State Rec., Vol. 8 of 9, West Jefferson Mental Health Clinic Records. Dr. Richard Bergeron's report reflects a diagnostic impression based on Robinson's subjective complaints and an independent examination of Borderline Intelligence and NOS (not otherwise specified) Psychosis. He discontinued the Haldol and Vistaril, which had been prescribed by another physician at either West Jefferson Hospital or Charity Hospital, and started him on Zyprexa.

subjective characterization of his purported psychiatric illnesses, these records do not show that he was suffering from any long-term psychiatric illness or disorder.    Furthermore, Dr. Salcedo's testimony makes clear, even if he had known about the past mental-health problems, the records of those visits would not have been influential in the least in determining his current mental state and competency to proceed with trial.    As Dr. Salcedo expressed, the mere existence of mental illness does not establish that one is incompetent. *Colburn v. Cockrell*, 37 F. Appx. 90, 2002 WL 1021891, at *6 (5th Cir. May 9, 2002) (citing *Mata v. Johnson*, 210 F.3d 324, 329 n. 2 (noting that "the presence or absence of mental illness or brain disorder is not dispositive" of competency)).    Similarly, a defendant may be found competent to stand trial even where there is evidence of drug addiction or the defendant is taking psychiatric medications.    *Holmes v. King*, 709 F.2d 965, 967–68 (5th Cir. 1983); *Basso v. Thaler*, 359 F. Appx. 504, 507–08 (5th Cir. 2010).    Thus, even if Robinson was suffering from a psychiatric disorder, that fact alone would not unequivocally demonstrate that he was not competent to understand the proceedings or assist in his defense.    *See generally Dunn v. Johnson*, 162 F.3d 302 (5th Cir. 1998).

Robinson does not allege that he could not or did not assist defense counsel or understand the trial proceedings.    *Dusky v. United States*, 362 U.S. 402 (1960) (two-part test for determining competency includes "whether the petitioner has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding; and whether he has a rational as well as factual understanding of the proceedings against him").    Moreover, the record plainly refutes any such assertion.    The sanity commission found that

Robinson was able to satisfy the requisite criteria for competency to proceed demonstrating that he fully understands the charges and the proceedings against him, and is able to assist his attorney in preparing his defense.    The record of Robinson's correspondence with the court and his testimony during the suppression hearing confirms his capability in this regard.[34]    Accordingly, Robinson has not shown that he received ineffective assistance of counsel in connection with the competency proceedings for failure to present his mental health history.

In a related claim, Robinson argues that counsel was ineffective for failing to pursue the motion for continuance of the *nunc pro tunc* competency hearing.    The record shows that on the morning of the hearing counsel withdrew the motion for continuance he had filed, apparently based on the fact that he was only recently retained as counsel, and stated he was ready to proceed.    Robinson's contention is once again based on his theory that counsel had not adequately prepared because he did not have Robinson's mental-health records for the competency hearing.    He argues that "unprepared Counsel then allowed a 'critical' misinterpretation in the case to develop.    A misinterpretation of Dr. Salcedo's testimony developed in regards to whether a 'major' psychiatric disorders [sic], such as Petitioner's schizophrenia and bipolar I disorder, and whether the less serious 'minor' disorders, such as Petitioner's jail house medical treatment, for sleep anxiety and drug withdrawal, would be

---

[34] *State v. Robinson*, 102 So.3d at 930.    *See* State Rec., Vol. 6 of 9, Trial Transcript (Suppression Hearing), pp. 18-27.

relevant at the *nunc pro tunc hearing*."[35]    As discussed above, however, counsel explored those issues during the hearing and Dr. Salcedo's testimony made it clear that past mental health treatment records were not critical to the proceedings and would not have influenced the competency determination.    Therefore, even if counsel's actions could be considered deficient, Robinson cannot establish that any prejudice resulted.    He is not entitled to relief on this claim.

2.    Trial Proceedings

Robinson contends trial counsel was ineffective for failing to change his plea to "not-guilty by reason of insanity."    As the state district court noted in denying relief:

> [U]nder LSA-R.S. 432, there is a legal presumption that defendant is sane at the time of the offense.    Criminal responsibility is not negated by existence of mental disease or defect.    Under LSA-R.S. 14:14, defendant must show that he suffered a mental defect which presented [sic] him from distinguishing between right and wrong.
>
> The facts included in the appellate opinion show that defendant's initial reaction was to lie about any involvement in the offense and denial of taking the wallet.    This clearly implies that defendant knew his actions were wrong (distinguishing between right and wrong at the time of the offense).    Thus petitioner does not present any evidence that would indicate that counsel was deficient in failing to pleading [sic] him not guilty by reason of insanity. Petitioner fails to prove counsel's deficiency or prejudice resulting.[36]

The Louisiana Fifth Circuit found that his conclusory allegations did not warrant relief. The Louisiana Supreme Court denied relief without additional reasons.

The affirmative defense of insanity requires a determination regarding whether, at

---

[35]  Rec. Doc. 1, Memo in Support, p. 37.

[36]  State Rec., Vol. 3 of 9, State District Court Order Denying PCR.

the time of the offense, the defendant was incapable of appreciating the nature and wrongfulness of his conduct.    *United States v. Levine*, 80 F.3d 129, 134 (5th Cir. 1996). Robinson has offered no evidence to show that he was legally insane at the time of the crime. His only supporting evidence consists of periodic visits to mental-health clinics and intermittent treatment and medication for non-specified psychosis several years before the instant crime occurred.

The record evidence in this case actually refutes his assertion that he was insane at the time of the offense.    The sanity commission appointed to make a determination of his competency had the opportunity to evaluate him, and determined he did not show any signs or symptoms of a major psychotic disorder.    This determination from two psychiatric experts closer to the time of the offense does not bode well for successful pursuit of an insanity defense.    Trial counsel reviewed all of the evidence in the case including the police report and the statements made by Robinson, as well as taking into consideration Robinson's assertions of past mental-health problems.    Robinson argues that "[his] actions of going back into the restaurant where the victim works, after taking a wallet (with no money in it), out of the victim's car, does not seem to be rational behavior.    Petitioner could not distinguish between right and wrong."[37]    That conclusory allegation falls woefully short of supporting his claim that he was legally insane at the time of the crime.    Moreover, as the state district court noted, the record reflects that Robinson changed his version of the story as to how he obtained the victim's wallet, which actually demonstrates that he was rational

---

[37]    Rec. Doc. 1, Memorandum in Support, p. 44.

and attempting to avoid responsibility.[38]    Given the unlikely success of an insanity defense under the circumstances, it would not have been unreasonable for counsel to forego such a strategy.    Based on the record, counsel was not ineffective for failing to pursue an insanity defense that would be contrary to the weight of the evidence, including the sanity commission evaluation, as well as his own observation and judgment.    *See Strickland*, 466 U.S. at 689–90 (stating that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment."); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[T]his court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); *McWee v. Weldon*, 283 F.3d 179 (4th Cir. 2002) (holding that counsel's failure to present an insanity defense did not constitute ineffective assistance of counsel because a weak insanity defense at trial would have cost the defendant credibility with the jury and hindered the trial strategy with regard to the death penalty).

Accordingly, the state courts' denial of relief on these claims was not contrary to, or an unreasonable application of, *Strickland*.    He is not entitled to relief on the ineffective-assistance-of-counsel claims.

B.  *Post-Conviction Error*

Robinson's final claim is that "the state courts' denial of petitioner's claim that it was a mistake of law when the court overlooked or ignored its previous order, ordering that

---

[38]  See also State Rec., Vol. 6 of 9, Trial Transcript (Officer McCraw), pp. 57-58; (Officer Becnel), p. 17.

counsel could not stipulate to a competency report and move to dismiss motion for sanity hearing, resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and/or resulted in an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   He argues that it was a "mistake of law and violates the law of the case doctrine, when state court, in denying Petitioner's PCR, ignored or overlooked a previous order...."[39]   The purported "order" by the Louisiana Fifth Circuit to which Robinson refers is found in the initial appeal opinion of March 2010, wherein the court reasoned:

> Before the motion to suppress hearing started, defense counsel stated, "I just want to put on the record, there had been a sanity motion filed. The doctors submitted a letter that he was competent to stand trial. And just to cover all bases, I will withdraw the motion at this—I don't know if we have had a sanity hearing." After the State informed defense counsel that he already stipulated to it, defense counsel stated, "okay, well—well if I have, then fine; I will just withdraw the motion, because the doctors have found him competent."

> We find that the trial court erred in allowing the defense to withdraw the motion for a sanity hearing after the trial judge appointed a sanity commission because it constituted a prohibited step in the criminal prosecution, after the defendant's mental incapacity to proceed was raised and before the trial court ruled on the defendant's mental capacity to proceed. Pursuant to LSA–C.Cr.P. art. 642, once the defendant's mental competency was raised and the trial court appoints a sanity commission, there can be no further steps in the prosecution of the case.

> The exact nature of Robinson's claim is unclear.   To the extent he may be arguing

that the state district court erred in denying post-conviction relief because it was bound by

---

[39]   Rec. Doc. 1, p. 48.

the Louisiana Fifth Circuit's initial decision on direct appeal that was ultimately reversed by the Louisiana Supreme Court, then the claim is simply not cognizable in this federal habeas proceeding.    Even if the state courts had erred in that regard, federal habeas corpus relief simply cannot be granted to remedy errors that occurred in state post-conviction proceedings.    As the United States Fifth Circuit Court of Appeals has explained:

> [O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief. *See, e.g., Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[I]nfirmities in state habeas proceedings do not constitute grounds for relief in federal court."); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotations omitted). Rather, we must find constitutional error at the trial or direct review level in order to issue the writ.

*Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999); *see also Duff–Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992); *Anthony v. Cain*, Civ. Action No. 07–3223, 2009 WL 3564827, at *23 (E.D. La. Oct. 29, 2009); *Baham v. Allen Correctional Center*, Civ. Action No. 07–4075, 2009 WL 3148757, at *3 (E.D. La. Sept. 30, 2009); *Davis v. Cain*, Civ. Action No. 07–6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008).

To the extent Robinson is claiming that he was denied a fair competency assessment because the trial court accepted defense counsel's alleged erroneous stipulation to the sanity-commission report, that claim does not warrant relief.    Contrary to Robinson's assertion, the Louisiana Fifth Circuit did not find that counsel was prohibited from entering a stipulation to the report.    Rather, the appellate court addressed the propriety of counsel withdrawing the motion for a sanity hearing.

Furthermore, the state district court flatly rejected his ineffective-assistance claim on post-conviction review finding no deficiency in counsel's stipulation to the report or resulting prejudice.    The district court found the stipulation was permitted under Louisiana law.    The state appellate court likewise denied relief, finding that Robinson failed to show any prejudice.    The Louisiana Supreme Court denied relief with no additional reasons stated.    The state courts' determination under *Strickland* was reasonable.

Robinson had a retrospective competency hearing in which one of the physicians who authored the report testified to his findings and the basis for his determination that Robinson was indeed competent to proceed.    The trial court held a full hearing and considered more than counsel's earlier stipulation in finding that Robinson was competent.    Thus, Robinson was not prejudiced by counsel's stipulation.    Nor did the stipulation itself render the *nunc pro tunc* competency hearing unfair.    Robinson is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Robinson's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[40]

New Orleans, Louisiana, this ___2nd___ day of _____January_____, 2017.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[40] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.